**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
TIMOTHY J. SULLIVAN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4560
Fax (410) 962-3630

September 12, 2013

LETTER TO COUNSEL:

RE:     *Monica R. Brown v. Commissioner of Social Security*
        Civil No. TJS-12-3073

Dear Counsel:

This matter is before me by the parties' consent. ECF Nos. 3 & 7. On October 18, 2012, Plaintiff Monica Brown ("Ms. Brown") petitioned this Court to review the Social Security Administration's final decision to deny her claim for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). ECF No. 1. I have considered Ms. Brown's Motion for Summary Judgment (ECF No. 15) and the Commissioner's Motion for Summary Judgment (ECF No. 22). I find that no hearing is necessary. Loc. R. 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed the proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). For the reasons that follow, I will grant the Commissioner's motion and deny the Plaintiff's motion. This letter explains my rationale.

On September 9, 2009, Ms. Brown filed applications for SSI and DIB benefits alleging disability commencing June 1, 2008. (Tr. 165-75). Ms. Brown's claims were denied initially on November 23, 2009 (Tr. 57-64), and upon reconsideration on June 30, 2010 (Tr. 78-81). A hearing was held on April 7, 2011 before an Administrative Law Judge ("ALJ"). (Tr. 26-52). Following the hearing, on April 20, 2011, the ALJ determined that Ms. Brown was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 7-25). The Appeals Council denied Ms. Brown request for further review of the ALJ's decision. (Tr. 1-6). The ALJ's decision dated April 20, 2011 constitutes the final, reviewable decision of the agency.

The ALJ evaluated Ms. Brown's claim for benefits using the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Ms. Brown was not engaged in substantial gainful activity, and had not been engaged in substantial gainful activity since June 1, 2008. (Tr. 12). At step two, the ALJ found that Ms. Brown suffered from the severe impairments of "affective disorders, diagnosed as bipolar disorder, and adjustment disorder, and a personality disorder; inflammatory pelvic disease status-post surgical intervention in 2006; Hepatitis B, and active substance abuse disorders (marijuana and alcohol abuse)." (Tr. 12). At step three, the ALJ found that Ms. Brown's impairments, separately and in combination, failed to meet or equal in severity any listed impairment. (Tr. 13).

The ALJ then determined that, despite Ms. Brown's severe impairments, she retained the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c), except the claimant is limited to unskilled, routine and repetitive tasks. The claimant is limited to occasional interaction with the public and co-workers.

(Tr. 21).

At step four, the ALJ determined that Ms. Brown has no past relevant work. (Tr. 24). At step five, however, the ALJ determined that considering Ms. Brown's "age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers that [she] can perform." (Tr. 26). As a result of this determination, the ALJ found that Ms. Brown was not disabled during the relevant time frame.

Ms. Brown presents a number of arguments on appeal, which the Court has reorganized as follows: (1) the ALJ misinterpreted a medical source's opinion concerning Ms. Brown's mental limitations; (2) the ALJ improperly considered reports of consultative examiners where no medical source statements were provided; and (3) the ALJ improperly considered Ms. Brown's Global Assessment of Functioning scores. I will address each argument in turn.

First, Ms. Brown argues that the ALJ failed to properly "consider every medical opinion in the record." ECF No. 15-1 at 7. In his written opinion, the ALJ stated:

> I further note that Dr. Willis' mental limitations on the claimant were only moderate, not extreme like Dr. Joseph's assessment. Dr. Willis'[ ] assessment of the claimant's mental limitations more closely approximates the State Agency's assessment and is more consistent with the totality of the evidence than Dr. Joseph's extreme opinion. I note that the claimant has been able to attend school and cosmetology classes, which is completely inconsistent with an assessment that the claimant has extreme limitations in mental functioning.

(Tr. 22). Ms. Brown notes that Dr. Ashley Willis' Medical Report Form 402B dated September 10, 2010 (Tr. 558-563) states an opinion that Ms. Brown experiences difficulties in maintaining concentration, persistence or pace "often." (Tr. 561). The form Dr. Willis used to render this opinion provides five checkboxes, labeled "none; seldom; often; frequent; constant," for the source to rate Ms. Brown's degree of limitation with respect to maintaining concentration, persistence or pace. (Tr. 561). Two of the other functional limitations set forth on the form (restriction of activities of daily living and difficulties in maintaining social functioning), each provide five checkboxes, labeled "none; mild; moderate; marked; extreme." (Tr. 561). Ms. Brown contends that by checking the option "often" rather than "seldom," Dr. Willis meant to convey her opinion that Ms. Brown's difficulties with respect to maintaining concentration, persistence or pace are more limited than "moderate." ECF No. 15-1 at 7. This argument has no merit. Unlike the options for "moderate," "marked," and "extreme," the form Dr. Willis used did not provide a definition for "often." On the form, the checkbox for "often" is listed in the middle of the choices and situated below the "moderate" choice for the other functional limitations.

Ms. Brown suggests that the ALJ's statement that "Dr. Willis's assessment of the claimant's mental limitations more closely approximates the State Agency's assessment" is a "mis-categorization" (ECF No. 15-1 at 7) of Dr. Willis's opinion. *Id.* Rather than rating Ms. Brown's limitations with respect to maintaining concentration, persistence or pace as "often" (Dr. Willis' opinion), the State Agency's assessment was that her limitations are "moderate." (Tr. 550). For the same reasons stated above, I am not persuaded that there is any difference between limitations that occur "often" and limitations that are "moderate," given the nature of the forms. The words used on the two forms are different, but the meanings appear to be interchangeable upon examination of the forms.

Ms. Brown also argues that Dr. Willis "had more than an adequate basis for asserting that [Ms. Brown] would often be deficient in concentration and pace." ECF No. 15-1 at 7. This argument, however, only supports the ALJ's conclusion that Dr. Willis' opinion concerning Ms. Brown's moderate mental limitations is "consistent with the totality of the evidence." (Tr. 22). Ms. Brown's interpretation of the term "often" as being more limited than a "moderate" rating is at the root of this argument. The ALJ did not reject Dr. Willis' opinion with regard to this issue, but instead interpreted Dr. Willis' opinion differently than Ms. Brown. For the reasons stated above, this argument is not persuasive.

Ms. Brown's second argument is that the ALJ improperly gave significant weight to consultative examination reports where the reports were not accompanied by any medical source statement. ECF No. 15-1 at 8. Ms. Brown concedes that "the lack of a medical source statement or residual functional capacity assessment does not invalidate a consultative examination," but contends that the consultative examinations are a "tremendous waste of money" without medical source statements. ECF No. 15-1 at 8.

The regulations provide that

[a]lthough we will ordinarily request, as part of the consultative examination process, a medical source statement about what you can still do despite your impairment(s), the absence of such a statement in a consultative examination report will not make the report incomplete.

20 C.F.R. § 404.1519n(c)(6); *see also* 20 C.F.R. § 416.919n(c)(6). Because the regulations specifically indicate that the absence of a medical source statement does not make a consultative examiner's report incomplete, Ms. Brown's argument is without merit. The ALJ properly weighed the State Agency medical consultants' assessments and consultative examination reports, found that they were entitled to significant weight, and adequately explained his reasoning. (Tr. 23).

Ms. Brown also argues that the "ALJ tried to make something of the Axis V GAF[1] . . . scores but the GAF scale does not have a direct correlation to the severity requirements in the agency's mental disorder listings." ECF No. 15-1 at 8 (internal quotation omitted). Ms. Brown is correct that "the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" *Wind v. Barnhart*, 133 F. App'x 684, 692 n.5, 2005 WL 1317040 (11th Cir. June 2, 2005) (quoting 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000))   An ALJ, however, is not precluded from considering a claimant's GAF scores, together with other evidence of record, in evaluating a claimant's mental impairments and limitations. *See Rios v. Comm'r of Soc. Sec.*, 444 F. App'x. 532, 535 (3d Cir. 2011) (finding that "[GAF scores] are only medical evidence that informs the Commissioner's judgment of whether an individual is disabled"); *Howard v. Comm'r of Soc. Sec.*, 276 F .3d 235, 241 (6th Cir. 2002) (stating that while a GAF score may be of "considerable help," it is not "essential" to determining an individual's residual functional capacity). Here, the ALJ properly considered Ms. Brown's GAF scores in combination with the other evidence of record. For example, the ALJ noted that when Ms. Brown's GAF scores rose from 45 to 50 in two weeks, she had also resumed therapy and reported "already feeling better" and "that she was having good days . . . and that she was enrolled in school and felt good about it." (Tr. 23). Ms. Brown's argument that the ALJ improperly considered her GAF scores is without merit.

For the reasons set forth herein, Ms. Brown's Motion for Summary Judgment (ECF No. 15) will be DENIED, and the Commissioner's Motion for Summary Judgment (ECF No. 22) will be GRANTED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/

Timothy J. Sullivan
United States Magistrate Judge

---

[1] The Global Assessment of Functioning ("GAF") scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. *Johnson v. Astrue,* No. TMD-10-947, 2011 WL 5149574 at *2 (D. Md. Oct. 27, 2011) (citing *Diagnostic and Statistical Manual of Mental Disorders,* Fourth Ed.). A GAF score is a

> subjective determination that represents the clinician's judgment of the individual's overall level of functioning. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death).

*White v. Comm'r of Social Sec.,* 572 F.3d 272, 276 (6th Cir. 2009) (citing *Edwards v. Barnhart,* 383 F. Supp. 2d 920, 924 n.1 (E.D. Mich. 2005))